## 48145. SAK v. THE STATE.

HALL, Presiding Judge. Defendant appeals from his conviction for conspiracy to commit murder. The sole issue on this appeal is whether all the elements of the crime of conspiracy were proved by the state; specifically whether "an overt act to effect the object of the conspiracy" had occurred before defendant "withdrew his agreement to commit a crime." Code Ann. §§ 26-3201 and 26-3202.

The evidence supports the verdict. There was substantial testimony, including a legally acquired admission by the defendant, that he drove from Macon to LaFollette, Tennessee with a pistol and with the intention of killing one or two people; that he found one of them and engaged her in conversation; that he told her of his intention to kill her; and only after this preliminary conversation did he decide he could not go through with it. The above described actions are sufficient to show an overt act toward the crime contemplated by the conspiracy before defendant's withdrawal. See also *Bridges v. State,* 72 Ga. App. 390 (33 SE2d 850).

*Judgment affirmed. Bell, C. J., Eberhardt, P. J., Pannell, Deen, Quillian, Clark and Stolz, JJ., concur. Evans, J., dissents.*
SUBMITTED MAY 7, 1973 — DECIDED JUNE 26, 1973.

*I. Burl Davis, Jr.,* for appellant.
*Fred M. Hasty, District Attorney, Stephen Pace, Jr.,* for appellee.
EVANS, Judge, dissenting. The evidence was sufficient to show that defendant and Mrs. Almeda Parks entered into a conspiracy in Bibb County, Georgia, as a result and in furtherance of which defendant went to Tennessee to murder Mrs. Betty Hatmaker. Upon his arrival, defendant engaged Mrs. Hatmaker in conversation and decided against going through with his intention to commit murder upon her, and returned to Georgia.

Thereafter, he was indicted and convicted in Bibb Superior Court on the charge of conspiracy to commit murder, as defined in Code Ann. § 26-3201. He contends that the evidence showed without dispute that before the overt act had occurred, he withdrew his agreement to commit the crime, and under Code Ann. § 26-3202 he

was entitled to an acquittal.

Code Ann. § 26-3201 defines conspiracy to commit a crime, and makes each conspirator responsible when "any one or more of such persons does *an overt act* to effect the object of the conspiracy." (Emphasis supplied.) His conduct in going to Tennessee and confronting the subject of the conspiracy, and thus placing himself in position where the crime could be carried out, unquestionably measures up to "an overt act," and without more, would authorize his conviction in this case.

But the lawmakers went further and provided that one who conspires to commit a crime may be relieved by withdrawing from the agreement at a certain time and place in the illegal scheme. Code Ann. § 26-3202 is as follows: "A co-conspirator may be relieved from the effects of this Chapter if he can show that before *the overt act* occurred, he withdrew his agreement to commit a crime." We have italicized in this statute three words, to wit: "the overt act." Compare and contrast these words with those used in Code Ann. § 26-3201, to wit: "an overt act." Do these two terms mean the same thing? Is "an overt act" the same as "the overt act"? The first implies *any* overt act; or *one of many* overt acts; while the latter implies *the one and only,* or *the principal* overt act.

Thus, under Code Ann. § 26-3201, a co-conspirator becomes liable to conviction when another conspirator does an overt act (meaning any overt act) to effect the object of the conspiracy. But the same legislative body at the same term (Ga. L. 1969, pp. 857, 867) in spelling out how a co-conspirator may be relieved (and thus holding out an inducement to him not to commit the crime), guarantees relief if he can show that before *the overt act* (meaning the principal act, that is, the actual crime itself) occurred, he withdrew his agreement to commit the crime.

But the inducement which is held out by the law to the consiprator *not to commit the crime* would be meaningless and completely without value if, as the defendant faced his victim, he wished to be relieved by not going through with the murder, and yet he could not withdraw because he had already committed *an* overt act by travelling from Macon to Tennessee for the purpose of committing the crime. Or perhaps one of his co-conspirators while two hundred miles away, had purchased airplane tickets for him to use in flight and concealment once he returned to Macon. Was it the intent of the General Assembly to make it *difficult* to withdraw from the illegal agreement, or to make it *easy* to do so? Was it the intent of this statute to tell the defendant as he faced

his victim: Despite your change of heart it is too late to withdraw now; you, or your co-conspirators, have already committed an (any) overt act in furtherance of the conspiracy; it will not help you one bit to withdraw at this late hour; go ahead and pull the trigger?

I cannot agree with this interpretation. I construe the statute to mean that a valuable inducement is held out to the defendant to withdraw at any time before the trigger is pulled, at any time before the actual crime is committed, and thus spare the life of the victim. To adopt the construction of the majority would mean that it is just as wrong, and the punishment is just as certain, to *conspire* to commit a crime and then not go through with it, as it is to actually *commit* the crime.

At the very least, the two statutes, when read in pari materia, are ambiguous. One uses the expression "an overt act" and the other uses the term "the overt act." These terms do not mean the same thing and they are, therefore, unclear; and in such case, the statute must be construed most favorably to the person accused of crime. *Hill v. State,* 53 Ga. 125, 127; *Waldroup v. State,* 198 Ga. 144, 145 (30 SE2d 896, 153 ALR 914); *Wood v. State,* 68 Ga. App. 43 (21 SE2d 915); *Matthews v. Everett,* 201 Ga. 730, 735 (41 SE2d 148); *Glustrom v. State,* 206 Ga. 734, 738 (58 SE2d 534). Under such construction the term "the overt act," construed most favorably to the accused, necessarily means the principal act, or the perpetration of the crime itself.

I dissent from the majority opinion, and would reverse the trial court.